# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER LORENZO, suing individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br>QUALCOMM INCORPORATED, a Delaware corporation,<br><br>Defendant. | CASE NO. 08cv2124 WQH (LSP)<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss the First Amended Complaint (Doc. # 24).

## Background

On November 18, 2008, Plaintiff Christopher Lorenzo initiated this action by filing a complaint (Doc. # 1). The complaint challenged the lawfulness of Qualcomm's licensing practices with respect to its intellectual property used for Code Division Multiple Access ("CDMA") wireless technology. The complaint alleged the following claims for relief: (1) violation of California's Cartwright Act, section 16720, *et seq.,* of the California Business and Professions Code; (2) violation of California's Unfair Practices Act ("UPA"), 17000, *et seq.,* of the California Business and Professions Code; (3) violation of California's Unfair Competition Law ("UCL"), section 17200, *et seq.,* of the California Business and Professions Code; (4) equitable and injunctive relief pursuant to section 16 of the Clayton Act; (5) common

law monopoly; and (6) unjust enrichment.

On March 3, 2008, this Court issued an order granting a motion to dismiss filed by Qualcomm (Doc. # 20). The Court concluded that Plaintiff lacked standing under the Clayton Act because "Plaintiff's injury as alleged in the Complaint is too remote from Qualcomm's alleged antitrust violations to support standing under the Clayton Act;" and "the Complaint fails to allege sufficient facts to support a finding that Plaintiff's alleged injury is inextricably intertwined with Qualcomm's unlawful conduct so as to fit within the narrow exception to the market participant requirement." *March 3 Order,* p. 11 (internal quotations omitted). The Court concluded that "Plaintiff's injuries as alleged in the Complaint are too remote to support standing under the Cartwright Act because Plaintiff's injuries occurred in a different market from the allegedly anticompetitive conduct, Plaintiff's injuries are separated by at least three intermediaries to the antitrust violation, and Plaintiff's injuries were not the direct result of Qualcomm's allegedly unlawful conduct." *Id.* at 13. With respect to the claim for violation of the UCL, the Court concluded "that Plaintiff has failed to satisfy the second prong of the test for standing under the UCL because the Complaint does not allege that Plaintiff relied on any misrepresentation made by Qualcomm." *Id.* at 15. The Court concluded that the complaint failed to state a claim for violation of the UPA because the complaint failed to allege facts to support a finding that Qualcomm has secretly allowed unearned discounts from purchasers. The Court concluded that the complaint failed to state a claim for common law monopolization because a claim for common law monopoly is not cognizable under California law. The Court concluded that the complaint failed to state a claim for unjust enrichment because a cause of action for unjust enrichment is not cognizable under California law, and the complaint failed to allege any contractual or quasi-contractual relationship between Plaintiff and Qualcomm. The Court dismissed the complaint with leave to amend.

On April 2, 2009, Plaintiff filed the First Amended Complaint ("FAC"), which is the operative pleading in this case (Doc. # 22). The FAC alleges the following claims for relief: (1) violation of the Cartwright Act; (2) violation of the UPA; and (3) violation of the UCL. The allegations with respect to the first claim for relief for violation of the Cartwright Act in

1  the FAC are essentially identical to the allegations in the original complaint, except that the
2  FAC also alleges:

> Qualcomm's CDMA licensing practices have proximately caused antitrust injury to Plaintiff and other members of the CDMA Device and CDMA Service Classes and threaten additional antitrust injury if it is allowed to continue. This antitrust injury consists of damages from supracompetitive prices - which are passed down from Qualcomm's licensees to CDMA vendors, including cellular carriers, to end consumers of CDMA devices and cellular services - as well as impaired non-price competition in the form of deterred innovation.

7  *Id.,* ¶ 71. The allegations with respect to the second claim for relief for violation of the UPA
8  are identical to the allegations supporting the UPA claim in the original complaint. With
9  respect to the third claim for relief for violation of the UCL, the FAC contains the following
10 additional allegations: The FAC alleges that

> [i]n reliance on Qualcomm's representation to offer its licensing on FRAND terms, standard-setting organizations adopted CDMA technology that incorporated Qualcomm's 'essential' patented technology. As a result of Qualcomm's failure to abide by its representations and commitment to licensing on FRAND terms, Plaintiff and other end users and consumers paid supracompetitive prices for the purchase of their CDMA-compliant devices and/or services. These supracompetitive prices were proximately caused by Qualcomm's misconduct and would not have been paid by consumers but for Defendant's misrepresentation and anticompetitive acts.

16 *Id.,* ¶ 89; *see* ¶¶ 91-97. The FAC alleges that "[h]ad Plaintiff known that Defendant's
17 anticompetitive conduct had resulted in supracompetitive prices in the cost of his Palm Treo
18 700Wx and Blackberry Curve cellular handsets, he would not have purchased those phones."
19 *Id.,* ¶ 96.
20        On April 20, 2009, Qualcomm filed the Motion to Dismiss the FAC. Qualcomm moves
21 to dismiss the FAC due to lack of standing and for failure to state a claim pursuant to Rules
22 12(b)(1), 12(b)(6), and 17 of the Federal Rules of Civil Procedure. On May 18, 2009, Plaintiff
23 filed the Opposition (Doc. # 25). On June 26, 2009, Qualcomm filed the Reply (Doc. # 28).
24 On July 6, 2009, the Court heard oral argument (Doc. # 29).

25                            **Standard of Review**

26        A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests
27 the legal sufficiency of the pleadings. *See De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.
28 1978). A complaint may be dismissed for failure to state a claim under Rule 12(b)(6) where

the factual allegations do not raise the right to relief above the speculative level. *See Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Conversely, a complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *See id.* (citing Fed R. Civ. P. 8(a)(2)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996).

The allegations in the complaint "may not evade [antitrust] requirements by merely alleging a bare legal conclusion." *Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 736 (9th Cir. 1987). "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed," especially in light of the fact that "antitrust discovery can be expensive." *Twombly,* 550 U.S. at 544. Plaintiffs alleging antitrust claims must set forth enough "factual matter" to "nudge[] their claims across the line from conceivable to plausible." *Id.* California courts similarly demand a "high degree of particularity in the pleading of Cartwright Act violations." *G.H.I.I. v. MTS, Inc.,* 147 Cal. All. 3d 256, 265 (1983); *see also Cellular Plus, Inc. v. Superior Court,* 14 Cal. App. 4th 1224, 1236 (1993).

## Analysis

**I.     Standing under the Cartwright Act**

Qualcomm contends that the FAC "re-alleges *verbatim* the same theory of injury this Court has already held cannot support standing under California's Cartwright Act." *Mot. to Dismiss,* p. 4 (emphasis in original). Qualcomm contends that "Plaintiff has simply peppered the FAC with allegations - of the most conclusory nature - to the effect that Qualcomm's alleged conduct was the 'proximate' cause of Plaintiff's supposed injury." *Id.* at 5. Qualcomm contends that "Plaintiff's addition of the words 'proximate cause' throughout his FAC is insufficient to prevent dismissal" because the injury alleged in the FAC "is still too remote to support standing." *Id.* Qualcomm contends that the Opposition "is devoted largely to

requesting that the Court reconsider its imposition of what the Plaintiff deems 'onerous and improper standing requirements,'" and that Plaintiff's request for reconsideration of the Court's prior ruling is "both procedurally and substantively improper." *Reply,* p. 3 (quoting *Opposition*, p. 1).

Plaintiff asserts that in granting the motion to dismiss the original complaint, the Court "acknowledged the broader standing conveyed under California's Cartwright Act as compared to standing under the Sherman Act," but that the Court improperly "impose[d] a 'market participant rule' commonly found in federal authorities and not addressed in the indirect purchaser context." *Opposition,* p. 6. Plaintiff contends that he has standing under the Cartwright Act even if the market participant rule did apply to his Cartwright Act claim because he has "alleged sufficient facts to show that he is a market participant." *Id.* at 11. Plaintiff requests that the Court deny the Motion to Dismiss with respect to Plaintiff's Cartwright Act claim. In the alternative, Plaintiff requests that the Court stay its decision pending the Ninth Circuit's ruling on an interlocutory appeal of a district court's dismissal of a Cartwright Act claim for lack of antitrust standing in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation,* 536 F. Supp. 2d 1129 (N.D. Cal. 2008). Plaintiff contends that the following issues, which bear directly on whether Plaintiff in this case has standing under the Cartwright Act, are currently on appeal in *DRAM:* (1) "Whether the requirements for standing under federal antitrust law . . . apply to indirect purchaser plaintiffs' state law antitrust claims;" (2) "If so, whether indirect purchasers, who are not participants in the same market in which the defendants have allegedly fixed prices, but are participants in a related and interlinked market, have antitrust standing . . . ;" and (3) "Whether . . . dismissal of plaintiffs' state law antitrust claims, based on their indirect purchases of DRAM as a component of computers, for lack of antitrust standing was erroneous." *Id.* at 13-14.

The allegations in the FAC with respect to the Cartwright Act claim are identical to the allegations in the original complaint, except that the FAC also alleges that Qualcomm's anticompetitive conduct "proximately caused" Plaintiff's alleged injury. *FAC,* ¶¶ 65, 71. The FAC, like the original complaint, alleges that there are at least three intermediaries - CDMA

chipset manufacturers, CDMA device manufacturers, and CDMA device vendors - between Plaintiff's injury and the alleged antitrust violations. The injury alleged in the FAC - supracompetitive prices - is the same as the injury alleged in the original complaint. The Court has already ruled that "Plaintiff's injuries as alleged in the Complaint are too remote to support standing under the Cartwright Act because Plaintiff's injuries occurred in a different market from the allegedly anticompetitive conduct, Plaintiff's injuries are separated by at least three intermediaries to the antitrust violation, and Plaintiff's injuries were not the direct result of Qualcomm's allegedly unlawful conduct." *March 3 Order,* p. 13. Plaintiff does not allege additional facts in the FAC to change this result. The additional allegations that Qualcomm's conduct was the "proximate cause" of Plaintiff's injury constitute bare legal conclusions, which are insufficient to withstand a motion to dismiss. *See Bell Atlantic*, 127 S. Ct. 1955. The Court concludes that Plaintiff's injury as alleged in the FAC is too remote from the alleged antitrust violation to support standing under the Cartwright Act. *See March 3 Order,* p. 13.[1] The first claim for violation of the Cartwright Act is dismissed. The Court declines to exercise its discretion to stay these proceedings pending the Ninth Circuit's ruling in *DRAM.* However, the Court dismisses the action without prejudice and with leave to reopen in the event that the Ninth Circuit reverses the district court's ruling with respect to standing under the Cartwright Act in *DRAM,* 536 F. Supp. 2d 1129.

---

[1] Plaintiff devotes much of the Opposition to the assertion that the Court improperly applied the market participant analysis used in federal antitrust cases to Plaintiff's Cartwright Act claim. This assertion is tantamount to a request that the Court reconsider its March 3, 2009 ruling that Plaintiff's injury is too remote to support standing under the Cartwright Act. Plaintiff's request is improper because Plaintiff has already litigated the issue of standing under the Cartwright Act. *See Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998) (internal quotations and citations omitted) (A motion for reconsideration is not proper "for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."); *FDIC v. Jackson-Shaw Partners No. 46, Ltd.,* 850 F. Supp. 839, 845 (N.D. Cal. 1994) (Motions for reconsideration "are not to be used to test new legal theories that could have been presented when the original motion was pending."). Plaintiff's request is also procedurally improper because Plaintiff filed the FAC rather than a request for reconsideration of the Court's decision dismissing the Cartwright Act claim in the original complaint for lack of standing.

**II.     Claim for Violation of California's Unfair Practices Act**

Qualcomm emphasizes that the Court dismissed the UPA claim from the original complaint for failure to state a claim, finding that the complaint failed to allege "facts that support the existence of secret terms that differ from these publicly announced terms." *Mot. to Dismiss,* p. 8 (quoting *March 3 Order,* p. 16-17). Qualcomm contends that "[w]ithout changing a single relevant allegation, Plaintiff has attempted to replead his UPA cause of action for supposedly 'secret unearned discounts.'" *Id.* at 7 (quoting *FAC,* ¶¶ 81-85). Qualcomm contends that the UPA claim alleged in the FAC therefore fails for the same reasons the UPA claim in the original complaint was dismissed.

Plaintiff contends that the FAC "alleges that Qualcomm protected its interests through non-disclosure agreements that prohibit parties to its CDMA licensing agreements from disclosing confidential information, including its discriminatory royalty rate pricing structure." *Opposition,* p. 16. Plaintiff contends that "Qualcomm's royalty discounts are 'secret' because the essential terms of the rebate were not (and are not) known to Plaintiff and the public - especially given that licensees are bound by non-disclosure agreements." *Id.* Plaintiff therefore contends that the FAC states a claim for violation of the UPA.

The allegations underlying the UPA claim in the FAC are identical to the allegations underlying the UPA claim in the original complaint. The Court has already concluded that the allegations are not sufficient to state a claim for violation of the UPA, and Plaintiff provides no basis for why the Court should reconsider its prior ruling dismissing the UPA claim on identical facts. The Court concludes that the FAC fails to state a claim for violation of the UPA. The third claim for violation of the UPA is dismissed.

**III.    Standing under California's Unfair Competition Law**

Qualcomm contends that the FAC alleges that Qualcomm made misrepresentations to various standards development organizations ("SDOs"), and that the SDOs relied on these misrepresentations in incorporating Qualcomm's technology into the relevant market. Qualcomm contends that "[c]ritically, however, Plaintiff had not alleged that *he* relied on any alleged representations made by Qualcomm 'when he purchased his cell phone or when he

1  selected his cellular service.'" *Mot. to Dismiss,* p. 6.  Qualcomm contends that the injury
2  alleged in the FAC is too remote and attenuated from Qualcomm's allegedly improper
3  representations and commitments to be proximately caused by Qualcomm's conduct.
4  Qualcomm contends that "[j]ust as standing is lacking if a plaintiff has not relied on an alleged
5  misrepresentation, a plaintiff lacks standing under the UCL if his alleged injuries were not
6  'proximately caused' by the defendant's conduct - that is, if there is only an attenuated
7  connection between defendants' alleged acts of unfair competition . . . and [plaintiff's] alleged
8  losses." *Reply,* p. 7 (internal quotations omitted).  Qualcomm contends that Plaintiff lacks
9  standing under the UCL because the FAC fails to allege facts sufficient to support proximate
10 cause or justifiable reliance.

11         Plaintiff contends that "Plaintiff amended his complaint to allege that, had Plaintiff
12 known that Qualcomm's anticompetitive conduct had resulted in supracompetitive prices, he
13 would not have purchased his cellular phone product." *Opposition,* p. 14.  Plaintiff contends
14 that the FAC explicitly alleges that supracompetitive prices were "a proximate result of"
15 Qualcomm's anticompetitive conduct.  *Id.* (quoting *FAC,* ¶ 97).  Plaintiff contends that "there
16 is no need to allege reliance because Plaintiff does not rely, an[d] indeed was never exposed
17 to, Qualcomm's misrepresentations." *Id.* at 15.  Plaintiff contends that Qualcomm's "attempts
18 to impose a 'reliance on misrepresentation' standard is improper and its motion to dismiss
19 should be denied." *Id.* at 15-16.

20         California's UCL permits civil recovery for "any unlawful, unfair or fraudulent business
21 act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof.
22 Code § 17200. Proposition 64 amended the UCL to limit standing to sue under the UCL. Prior
23 to the passage of Proposition 64, the UCL "authorized any person acting for the general public
24 to sue for relief from unfair competition." *Californians for Disability Rights v. Mervyn's, LLC,*
25 39 Cal. 4th 223, 227 (2006).  "After Proposition 64, which the voters approved . . . a private
26 person has standing to sue only if he or she 'has suffered injury in fact and has lost money or
27 property as a result of such unfair competition.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17204).
28 The requirement that the party asserting standing under the UCL lose money or property as a

result of unfair competition "imposes a causation requirement." *Hall v. Time Inc.,* 158 Cal. App. 4th 847, 855 (2008). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Hall,* 158 Cal. App. 4th at 855 ("We use the word 'causation' to refer both to the causation element of a negligence cause of action . . . and to the justifiable reliance element of a fraud cause of action.").

Under the UCL, "there are three different varieties of unfair competition: practices which are unlawful, unfair or fraudulent." *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 837 (2006); *see also Albilio v. Intermodal Container Services, Inc.,* 114 Cal. App. 4th 190 (2003) (Under the UCL, a plaintiff "must establish that the practice is either unlawful (i.e., is forbidden by law), unfair (i.e., harm to victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public.)." For claims based on the "fraudulent" prong of the UCL, courts have held that the plaintiff must allege that the plaintiff justifiably relied on the purported misrepresentations. *See Laster v. T-Mobile USA, Inc.,* 407 F. Supp. 2d 1181, 1193 (S.D. Cal. 2005). For claims based on the "unfair" or "unlawful" prong of the UCL, courts have held that the plaintiff need not allege reliance on misrepresentations, but must allege "causation more generally." *See In re Ditropan XL Antitrust Litigation,* 529 F. Supp. 2d 1098, 1007 (N.D. Cal. 2007). "An act is the proximate cause of an event, when, in the natural order of things and under the circumstances, it would necessarily produce that event, when it is the first and direct power producing the result." *Oakland Bank of Sav. v. Murfey,* 68 Cal. 455, 462 (1986) (internal quotations omitted). The "traditional principle of proximate cause suggests the use of words such as 'remote,' 'tenuous,' fortuitous,' 'incidental,' or 'consequential' to describe those injuries that will find no remedy at law." *Blue Shield v. McCready,* 457 U.S. 465, 477, n. 13.

The FAC alleges:

> In reliance on Qualcomm's representation to offer its licensing on FRAND terms, standard-setting organizations adopted CDMA technology that incorporated Qualcomm's 'essential' patented technology. As a result of Qualcomm's failure to abide by its representations and commitment to licensing on FRAND terms, Plaintiff and other end users and consumers paid supracompetitive prices for the purchase of their CDMA-complaint devices

|   |   |
|---|---|
| 1 | and/or services.  These supracompetitive prices were proximately caused by Qualcomm's misconduct and would not have been paid by consumers but for Defendant's misrepresentation and anticompetitive acts. |
| 2 |   |

*FAC,* ¶ 89; *see also FAC,* ¶¶ 90-95.

As alleged in the FAC, there are at least three intermediaries between Qualcomm's representations and commitments underlying Plaintiff's UCL claim and Plaintiff's purported injury. The FAC does not allege any facts to support a finding that Plaintiff paid more for her phone than a comparable phone as a result of Qualcomm's unlawful, unfair and/or fraudulent conduct. The FAC does not allege any facts to support a finding that, even if Plaintiff did pay more for her phone than a comparable phone, the supracompetitive price could be traced to Qualcomm's unlawful, unfair and/or fraudulent conduct. As alleged in the FAC, the relationship between Plaintiff's purported injury and Qualcomm's unlawful, unfair and/or fraudulent conduct is remote, attenuated and consequential. Aside from conclusory allegations that Plaintiff suffered injuries "as a result of" Qualcomm's conduct, and that Qualcomm's conduct was the "proximate cause" of Qualcomm's injury, the FAC does not alleges facts to demonstrate how Qualcomm's representations and commitments proximately caused Plaintiff's alleged injury. *See Blue Shield,* 457 U.S. at 477, n. 13. To the extent that the Plaintiff seeks to assert a claim under the UCL based on misrepresentations made by Qualcomm, the FAC does not allege that Plaintiff justifiably relied on any misrepresentation made by Qualcomm. *See Laster,* 407 F. Supp. 2d at 1193. The Court concludes that Plaintiff lacks standing under the UCL because the FAC fails to allege facts to support a finding that Plaintiff is alleged as a result of Qualcomm's unlawful conduct. *See* Cal. Bus. & Prof. Code § 17200. The claim for violation of the UCL is dismissed.

///
///
///
///
///
///

## Conclusion

IT IS HEREBY ORDERED that the Motion to Dismiss (Doc. # 24) is **GRANTED.** The above-captioned action is **DISMISSED without prejudice and with leave to reopen** in the event that the Ninth Circuit reverses the district court's ruling with respect to standing under the Cartwright Act in *DRAM,* 536 F. Supp. 2d 1129 (N.D. Cal. 2008).

DATED: August 10, 2009

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge